### Cecil DISHMAN, Plaintiff,

v.

### CRAIN BROTHERS, INC., and Local No. 66, 66A, B, C, D & R of the International Union of Operating Engineers, Defendants.

### Civ. A. No. 74–12.

United States District Court, W. D. Pennsylvania.

June 16, 1976.

Richard F. Kronz, Stone & Raynovich, Pittsburgh, Pa., Tom E. Medeiros, Huntington, W. Va., for plaintiff.

Daniel W. Cooper, Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., Alexander C. Sherrard, Murray I. Litmans, Campbell, Thomas & Burke, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This is an action brought by plaintiff under the Labor Management Relations Act of 1947 (29 U.S.C. § 185) to recover compensatory and punitive damages for the defendant company's alleged breach of a collective bargaining agreement and the defendant union's alleged breach of its duty of fair representation.

The case arises out of plaintiff's employment as a boat pilot (i. e., captain) for the defendant company from March, 1970 through December, 1971. Plaintiff alleges that during this period he was paid less than the prevailing wage rate under the applicable collective bargaining contract between the company and the defendant union. Plaintiff asserts that he did not become aware of this circumstance until he was transferred to another vessel, where he worked as a pilot under the same labor contract, but received greater compensation in that capacity than as pilot on the previous assignment. He avers that he brought this matter to the attention of the company and later referred it as a grievance to the union, but that the union refused to process the grievance, and indeed took no affirmative action on it.

Both defendants, company and union, deny liability. The company contends that it paid plaintiff the full wage scale applicable to his employment throughout the relevant period; that the operative labor agreement between it and the union contemplated a different wage scale for "small boat" pilots than for "big boat" pilots; and that the wage rate to which plaintiff claims entitlement applied only to pilots of big boats. The company asserts that the labor contract at issue inadvertently omitted the wage rates pertaining to small boats, but that the practice of the company and union was to maintain a differential in pay between pilots of small and big boats; that at no time prior to plaintiff's claim was the practice questioned; and that at no time was there an agreement that pay rates for small and big boat pilots would be identical.

The contentions of the defendant union track those of the company. In addition, however, the union avers that it did not proceed to arbitration with plaintiff's claim because its investigation of the grievance revealed the company's position to be correct, and that it did not engage in any bad faith or arbitrary conduct regarding plaintiff's grievance.

On April 5 and 19, 1976, in a non-jury proceeding, the Court heard evidence relating to the various contentions set forth above. The following shall constitute the findings of fact and conclusions of law required by F.R.Civ.P. 52(a):

From March, 1970 through December, 1971, plaintiff Cecil Dishman was employed by defendant Crain Brothers, Inc., a Pennsylvania corporation engaged in river towing and marine construction, as a pilot on the Motor Vessel Roy L, classified by the company as a "small boat." During this period, and at all times material hereto, defendant Local Union No. 66, 66A, B, C, D & R of the International Union of Operating Engineers represented those Crain employees who were employed on the company's tow boats and docks.

Defendants entered into written contracts covering Crain's employees for three-year periods, the pertinent agreements being dated September 23, 1966, September 23, 1969 and September 23, 1972. The September, 1966 contract provided for pay rate differentials for Crain tow boat employees based on the horsepower of the boat. The September, 1969 contract covering tow boat employees did not provide for a pay differential based on horsepower. The September, 1972 contract provided for a pay rate differential between large boats and small boats.

The September, 1969 tow boat employee contract was negotiated by Edward Zelinski, former business agent for the union, and Clifford H. Crain, for the company. At the time of these negotiations, Zelinski, for the union, sought to combine the wage rates for all tow boat employees. Crain, however, refused to agree to the proposal, and a pay rate differential based upon boat size rather than horsepower was then agreed to by the union and the company.[1] The written contract which was intended to embody defendants' September, 1969 agreement was typed by the union; due to a clerical error, occasioned by inadvertence and oversight, the pay rate for small boat employees was omitted from the written instrument.

During the term of the September, 1969 agreement, in accordance with the understanding of the contracting parties, Crain paid wage rates which recognized a differential between large and small boat employees, and all employees of Crain were paid in accordance with this big boat-small boat rate differential. Thus, during the period covered by the September, 1969 agreement that plaintiff worked as pilot on the Motor Vessel Roy L, he was paid the rate agreed upon by Crain and the union for small boats.

In September, 1972, plaintiff Dishman notified the company and a representative of the union of his grievance, asserting that he had not been paid the hourly wage rate specified in the 1969 labor agreement for hours served as pilot on the Motor Vessel Roy L. Discussions were held concerning Dishman's grievance between Crain and Richard Ward, who succeeded Zelinski as business agent for the union prior to the filing of plaintiff's grievance and negotiation of the 1972 labor contract. Both Zelinski and Crain advised Ward that a pay rate differential between large and small boats had been negotiated and agreed upon by defendants, but inadvertently omitted from the September, 1969 labor contract when that contract was typed. Clifford Crain confirmed these facts in a March, 1973 letter to Ward. Ward's communications with Zelinski and Crain caused him to conclude that the company's position was correct and that plaintiff's grievance was groundless.

A meeting was arranged in March, 1973 to advise Dishman of the results of the union's investigation of his grievance. Dishman did not appear. Attempts by Ward to contact plaintiff by telephone proved fruitless, and Ward was advised in the course of one call that Dishman no longer worked for Crain, but was seeking work in Ohio.

No employee of Crain other than plaintiff has filed any grievance regarding rates of pay for small boats.

It is apparent from the foregoing findings that the legal issues presented in this

---

1. Plaintiff took no part in these negotiations which resulted in the September, 1969 collective bargaining agreement.

case are neither broad nor overly complex. As indicated above, the Court has no doubt that defendants herein, company and union, consummated the 1969 contract negotiations with an understanding that there would be a pay rate differential based upon vessel size, that defendants fully intended to incorporate this understanding into their written contract and that the 1969 agreement ultimately executed by the parties contained no reference to rates for small boats because of a clerical error in the preparation of the typed instrument.[2]

The critical aspect, then, of plaintiff's claim for breach of contract is not the intention of the defendant parties to the 1969 tow boat contract or the substance of their true agreement, but rather whether parol evidence is admissible to show defendants' actual agreement—a wage rate differential based on vessel size—in the face of an indisputably integrated contract that makes no mention of such a pay differential. In considering this question, the Court is fully mindful of the exclusionary impact of the Parol Evidence Rule where parol is offered to add to or modify an integrated agreement. But I am no less mindful of the near-axiom that the Rule is quite simply inoperative in instances where parol evidence is offered for the purpose of showing that, by reason of a mutual mistake, a written agreement does not truly express the intention of the parties. *Bugen v. New York Life Ins. Co.*, 408 Pa. 472, 184 A.2d 499 (1962).

That is precisely the situation here. The omission from the operative written instrument of small boat pay rates, negotiated for, agreed to and applied in subsequent practice without dispute between the contracting parties, was the product of bilateral inadvertence and accident—a mutual mistake. In such circumstances, the writing, facially absolute and unambiguous as it may be, is subject to modification or alteration by competent parol evidence to reflect the true intention of the parties.

Witnesses of both parties to the 1969 labor contract, as well as corroborating circumstances, attest to the mistake and to defendant's actual agreement. See *Bugen v. New York Life Ins. Co., supra.* That agreement, in this instance both provable and proved by parol evidence, embraced a wage rate differential between small and large boats. It was in no way breached by the defendant company—plaintiff was paid at the contract rate for his service as pilot on a small vessel. He is therefore not entitled to recover on his claim for breach of contract.

This result is not altered by plaintiff's contention that parol evidence to establish mutual mistake can be introduced only by way of counterclaim for reformation, and that no such counterclaim has been made in this case. We note first of all that, as a general proposition, the Court would not be inclined to adopt so technical an argument where to do so would engender a result at odds with the interests of justice and the demands of common reason. Moreover, I entertain some doubt as to whether formal reformation of the contract is a cognizable issue in a case where both parties to an agreement are in accord as to the contents of the agreement between them.

But the most significant problem with plaintiff's position is that the sole case he cites as authority for the proposition that parol evidence to show mutual mistake can be introduced only by counterclaim for reformation, *Crompton-Richard Company, Inc., Factors v. E. P. Tatum Smith, Jr.*, 392 F.2d 577 (3d Cir. 1967), does not appear to require that the defense of mutual mistake be pleaded exclusively by counterclaim. As the defendant company has pointed out, parol evidence was disallowed in *Crompton*, but the Court of Appeals based its disallowance on the fact that " . . . no such

2. It should be noted, parenthetically, that the record is utterly devoid of anything indicative of fraud in defendants' assertion that a mutual mistake occurred in the preparation of the 1969 tow boat agreement. Nor has plaintiff produced any evidence that the contracting parties did not, in fact, negotiate an agreement which differentiated between small and big boat wage rates.

independent contract theory was raised in the pleadings in our case *either by way of defense or counterclaim.*" *Id.* at 577–578 (emphasis supplied). In the instant case, both defendants answered plaintiff's complaint with, *inter alia,* explicit averments that the written contract did not contain the entire contents of the 1969 agreement, and explicit averments as to the complete contents thereof. I fully adhere to defendant Crain's suggestion that these averments in defendants' pleadings constitute a properly pleaded defense under Rule 8(b) and (c) of the Federal Rules of Civil Procedure. Accordingly, parol evidence establishing the mutual mistake is admissible despite the absence of a counterclaim for reformation of the 1969 contract.

In light of the foregoing discussion, I do not think disposition of plaintiff's claim against the union for breach of its duty of fair representation requires lengthy analysis.

The theory of liability upon which this aspect of the instant action rests was enunciated by the Supreme Court in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), holding that a union is subject to a statutory duty to fairly represent the members of the collective bargaining unit. Under *Vaca,* this duty of fair representation is breached only when the union's conduct toward a member of the bargaining unit is shown to have been "arbitrary, discriminatory, or in bad faith." *Id.,* at 190, 87 S.Ct. at 916.

In the instant case, then, the defendant union was not obligated to take plaintiff's grievance to arbitration or even to process it through all or part of the grievance mechanism; nor was it required to adhere to the exact requirements of formal grievance procedure in the initial stages of its investigation. Rather, under the doctrine set forth in *Vaca v. Sipes, supra,* and for purposes of the instant law suit, the union simply was required to act fairly and in good faith in handling plaintiff's complaint. This it clearly did.

It may be, as plaintiff contends, that the defendant union did not precisely comply with the grievance procedure embodied in Article X of the 1969 contract. But representatives of the union investigated the merits of plaintiff's grievance, held meetings with representatives of the company and attempted to contact plaintiff by letter and phone to inform him of the result of the investigation. That result, of course, was a union determination that in light of the undisputed company-union agreement on a wage differential, plaintiff's grievance was devoid of merit. The union's decision was neither arbitrary nor activated by malice; it was reached after a clearly good-faith effort to process and investigate plaintiff's grievance revealed that the union had in fact agreed to the wage differential complained of. It would be strange indeed if the duty of fair representation envisioned by the *Vaca* Court were now construed to compel a union processing a grievance to insist on an agreement it knew did not exist. Are we then to characterize as "bad faith" the union's refusal to falsely insist that no mistake was made in the preparation of the written document? Would it have been "good faith" for the union to have taken plaintiff's grievance through the entire grievance process, knowing full well throughout that it had made a mistake in typing the contract? I think it self-evident that the answer to both questions must be no. The defendant union investigated, candidly admitted that an honest error had been made and dropped plaintiff's grievance as groundless. In this, the union acted fairly and reasonably, and, accordingly, I find that it is not liable to plaintiff for breach of the duty of fair representation.

For the reasons stated above, plaintiff's claims for breach of contract and for breach of the duty of fair representation will be disallowed, judgment will be entered for defendants and the instant case will be dismissed.

An appropriate Order shall issue.