JAMES RUSSELL THOMPSON, DONALD GUFFEY, SR.,
*v.* MODERNFOLD INDUSTRIES

[No. 1-776A116. Filed March 22, 1978.]

*James R. White,* of New Castle, *E. Edward Dunsmore,* of Knightstown, for appellants.

*Scotten & Hinshaw,* of New Castle, *Harlan, Schussler, Keller & Boston,* of Richmond, *Poletti, Freidin, Prashker, Feldman & Gartner,* of New York, New York, for appellee.

LYBROOK, P.J. — Plaintiffs-appellants, James Thompson and Donald Guffey (plaintiffs) bring this appeal from a dismissal of their action against defendant-appellee Modernfold Industries (Modernfold). Their two actions were consolidated for trial and appeal.

Plaintiffs have raised two issues for review:

(1) The decision of the trial court is not supported by sufficient evidence.

(2) The decision of the trial court is contrary to law.

Plaintiffs instituted their suits against their former employer, Modernfold, alleging they were wrongfully discharged. Damages in the amount of $50,000 were demanded. Modernfold responded with a motion to dismiss for lack of jurisdiction, claiming that under federal law it was immune from such suits under the facts of this case. After a hearing in which testimony was given on the factual issues of the case, the trial judge granted the motion to dismiss. Plaintiffs then timely perfected this appeal.

## I.

## APPLICABLE LAW

Although plaintiffs' suits are for breach of contract and would normally be decided under Indiana law, Modernfold correctly contends that federal labor law must control in this situation. The contract involved in this case is a collective bargaining agreement between a labor union and an industry affecting interstate commerce, and it is now well settled that a civil action for a violation of such a contract must be governed by federal law.

Extensive administrative procedures were created by Congress in the Wagner Act of 1935 in order to decrease industrial strife

and to encourage collective bargaining between employers and unions. The goals of this legislation were frustrated, however, by the laws of numerous states regarding contracual disputes. Therefore, Congress in 1947 enacted § 301(a) of the Labor Management Relations Act (LMRA), 29 USC 185(a), which allowed the filing of an action in a federal district court for the enforcement of the provisions of a collective bargaining agreement:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Any question as to the law to be applied in such actions (whether state or federal) was settled by the United States Supreme Court in its decision in *Textile Workers Union v. Lincoln Mills of Alabama* (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. In *Lincoln Mills*, which concerned an employer's breach of promise to submit a grievance to arbitration, the Court held that § 301(a) gave the federal courts the authority to fashion a body of federal law in order to enforce collective bargaining agreements. The Supreme Court felt that this interpretation of § 301(a) was necessary in order to effect the intent of Congress to supply peaceful solutions to labor disputes. The Court further emphasized the importance of arbitration in the grievance procedure and characterized the employer's agreement to arbitrate as "the *quid pro quo* for an agreement not to strike."

The Supreme Court later determined in *Charles Dowd Box Co. v. Courtney* (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, that § 301(a) did not grant exclusive jurisdiction to federal courts, and held that the state and federal courts had concurrent jurisdiction to enforce labor contract promises. Shortly thereafter, the Court in *Local 174, Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, held that state courts were bound to follow the body of federal labor law devised pursuant to *Lincoln Mills*.

The impact of § 301(a) was then broadened considerably in *Smith v. Evening News Association* (1962), 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. The court in the *Smith* case held that earlier preemption cases, such as *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, did not necessarily preclude actions under § 301(a) for violations of collective bargaining agreements, even though such violations arguably were within the jurisdiction of the National Labor Relations Board (NLRB).

Probably the most significant pronouncements of social policy in federal labor law were delivered in three Supreme Court cases now known as the Steelworkers Trilogy. *United Steelworkers of America v. American Manufacturing Company* (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers of America v. Warrior and Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and *United Steelworkers of America v. Enterprise Wheel and Car Corp.* (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. It was in these cases that the Court elevated the process of arbitration to a position of superiority over that of the courts and the judicial system for the solution of most labor disputes.

In the *Warrior and Gulf* case, the Supreme Court listed four bases for the superior position of the arbitrator as an industrial peacemaker. First, arbitration in collectively bargained labor contracts stands on a completely different basis than such clauses in commercial contracts and the hostility shown by courts to arbitration clauses is misplaced in this area. The Court felt that while arbitration is the replacement for litigation in the commercial case, it is "the substitute for industrial strife" in the labor cases. Secondly, a collective bargaining agreement is intended to be more than just a contract. Such an agreement is intended to cover the entire employer-employee relationship, thereby including the "common-law of a particular industry or particular plant." Next, the purpose of the collective bargaining agreement is to "erect a system of industrial self-government." Arbitration and the grievance procedure set out in the contract are "at the very heart of the system of industrial self-government." Further, arbitration is the method for establishing a system of private law for the distinctive problems arising within the industrial world. Finally, the method of the

arbitrator is better suited than that of a court. The arbitrator is not bound by the words of the labor contract in solving disputes, but may look to the practices and habits of a particular industry or shop—the common law of the industry. Furthermore, he is often chosen for his expertise in the area of a particular dispute and should be better qualified to offer a solution than a judge.

As a result of the strong public policy favoring the solution of labor disputes by use of the procedures outlined in a collective bargaining contract, the Supreme Court has laid down the general rule that an employee who is covered by a collective bargaining agreement which provides for arbitration of grievances may not maintain a civil action for damages in the case of an alleged breach of that agreement but must instead look to his union for his remedy through the contractual grievance procedure:

> "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available . . . But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant." (Citations omitted). (Footnotes omitted). (Emphasis in original). *Republic Steel Corporation v. Maddox* (1965) 379 U.S. 650, 652, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580.

This means, then, that in cases where a collective bargaining agreement provides an administrative procedure for settling disputes, the procedures outlined in the contract become the exclusive remedy of the employee, and the courts have no jurisdiction to review the merits of the employee's claims. *Republic Steel Corporation v. Maddox, supra; Hines v. Anchor Motor Freight, Inc.* (1976), 424 U.S. 554, 96 S.Ct. 1048. The rule does not apply, however, where the contract clearly shows that the parties did not intend to make the grievance and arbitration procedure the exclusive remedy.

The Supreme Court has established three exceptions to this general rule that will allow an employee to maintain a direct action against his employer (and also against his union) despite the fact that the employee has not exhausted the appropriate remedies under the labor contract. The Court recognized in *Vaca v. Sipes* (1967), 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, that under certain circumstances, the contractual remedy open to the employee would be wholly inadequate:

"However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." 386 U.S. at 184, 185, 87 S.Ct. at 914.

Two of these three exceptions were given by the Supreme Court in *Vaca*. The first situation in which a civil action is not barred by a failure to invoke the contractual remedies occurs when "the conduct of the employer amounts to a repudiation of the contractual procedures." Under such circumstances, the employer is estopped by his own conduct from raising the defense of the employee's failure to exhaust all grievance procedures. The second situation allowing judicial enforcement of the employee's claim arises where (1) "the union has sole power under the contract to invoke the higher stages of the grievance procedure", and (2) "the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." (Original emphasis.)

The third exception arises where the employee can show that it would be futile for him to follow the remedies outlined in his contract. This situation was displayed in *Glover v. St. Louis-San Francisco Ry. Co.* (1969), 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519. In that case, black employees alleged they were being denied promotion opportunitites because of their race. When these employees attempted to file grievances, they were informed by both union and company officials that filing grievances would be a waste of time

and that nothing would be done for them. Under such circumstances, the Supreme Court held that the employees were not barred by their failure to make use of contractual remedies.

## II.

## SUFFICIENCY OF THE EVIDENCE

Plaintiffs first allege that the decision of the trial court in sustaining Modernfold's motion to dismiss is not supported by sufficient evidence. However, it is well settled that a negative judgment may not be contested as not being supported by sufficient evidence by a party bearing the burden of proof, but rather must be attacked as being contrary to law. *Dyer Construction Co., Inc. v. Ellas Construction Co., Inc.* (1972), 153 Ind. App. 304, 287 N.E.2d 262. From the case law discussed above, we feel it is clear that plaintiffs had the burden of proving that the trial court had jurisdiction to entertain these actions.[1]

The Supreme Court of Wisconsin was faced with this same question as to the burden of proof in a recent case involving a suit against an employer for wrongful dismissal. Faced with the allegation that the union had breached its duty of fair representation, the Wisconsin court held that the employee had the burden of proving this allegation in order to maintain the civil action:

> "The question before us here is who has the burden to establish this fact. We believe the employer is obligated in the first instance by way of an affirmative defense to allege that the contract grievance procedure has not been exhausted. If this fact has been established by proof, admission or stipulation, the employee cannot prosecute his claim unless he proves the union breached its duty of fair representation to him." *Mahnke v. Wisconsin Employment Relations Comm.* (1975), 66 Wis.2d 524, 225 N.W.2d 617, 623.

It is uncontested that plaintiffs' claims of wrongful dismissal were never taken to arbitration and they therefore did not exhaust their contractual remedies. Accordingly, plaintiffs had the burden of

---

1. Plaintiffs have raised no issue as to whether or not a motion to dismiss under Trial Rule 12(B)(1) for lack of jurisdiction over the particular case was the proper procedure to be used in deciding this case. Therefore, that issue will not be considered in this opinion.

showing that they were excused from this requirement and may not raise the issue of insufficiency of the evidence on appeal.

### III.

### CONTRARY TO LAW

The standard of review to be used by this court in determining whether a decision of the trial court is contrary to law has been stated many times. It is only where the evidence is without conflict and can lead to but one conclusion and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the grounds that it is contrary to law.[2] *Landaw v. Tucker Freight Lines, Inc.* (1970), 148 Ind. App. 48, 263 N.E.2d 756.

The evidence most favorable to Modernfold reveals that plaintiffs were discharged by Modernfold on August 4, 1972, for allegedly leading and participating in an illegal wildcat strike. On August 8, plaintiffs filed grievances with the union contesting the discharges and the union proceeded through the first four steps in the grievance procedure outlined in the labor contract. The contract provided that if a grievance was not settled in one of the first four steps the union and the company could proceed to binding arbitration.

After discussions at the fourth step produced no solution, the union requested five more days in which to decide whether or not to arbitrate. On the day after the fourth step discussion, the union filed a charge with the NLRB alleging that the dismissal of plaintiffs constituted an unfair labor practice. This charge was investigated by the NLRB, which found insufficient evidence of any violation to justify the issuance of a complaint. The NLRB notice refusing further action was issued on September 29, 1972.

The issue of plaintiffs' discharges was next raised at a special union-employer meeting on October 20, 1972, at which time the union requested arbitration of the discharges. An objection was made to this request by Howard Acker, Personnel Manager of Modernfold, on the grounds that the request was untimely and that

2. We note here that this standard of review would not apply to a motion to dismiss for failure to state a claim for relief under TR. 12(B)(6).

the company could therefore be unfairly subjected to increased liability for lost wages. A grievance was then filed by the union on November 10, contesting the company's refusal to arbitrate. Three days later, and prior to the filing of these actions, a step four meeting was held between the union and Modernfold. Acker testified that he continued to assert his position that the request to arbitrate the discharges was untimely, but that he offered to submit to arbitration both the merits of the discharges and the question as to timeliness of the arbitration request. The union again asked for an extension of time to decide how to proceed. Shortly thereafter the union withdrew its grievance as to the timeliness issue.

On February 20, 1973 plaintiffs filed their complaints for damages. The union was not joined as a party defendant. Plaintiffs made no demand in their complaints or subsequent pleadings for specific performance of their contractual remedies to force Modernfold into arbitration.

Although plaintiffs argue that they are excused from the requirement of exhausting their contractual remedies, they have pointed out no substantial evidence to show why they should be excused. Their argument seems to be that because they desired arbitration of their claims and because arbitration never in fact occurred, then either (1) Modernfold repudiated the contract or (2) the union breached its duty of representation. However, the supposition of such hypothesis falls far short of plaintiffs' burden of proof.

Plaintiffs first argue that because Acker objected to the Union's request for arbitration on the grounds the request was untimely, Modernfold repudiated the contract. However, there is substantial evidence in the record to support the trial court's finding that Modernfold offered to arbitrate both questions before plaintiffs filed their actions. Although the labor contract is silent as to any time limits in which arbitration must be requested by the union, the Supreme Court has held that procedural issues relating to the right to arbitrate are to be decided by the arbitrator and not the court:

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to

arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley and Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898.

Furthermore, Acker also testified that it was common practice in order to proceed with arbitration for a union representative to bring to him a $50.00 check as the union's share of the $100.00 filing fee and request that Acker send a letter to the American Arbitration Association requesting a panel of arbitrators. Both Acker and Clifford Losey, former president of the union, testified that no representative of the union ever made a formal request for arbitration or ever tendered a check to cover the union's share of the filing fee.

Plaintiffs argue that if Modernfold did not repudiate the contract, then the union must have failed in its duty to process the claims. However, the evidence offered by plaintiffs does not measure up to the standard in *Vaca* of showing a wrongful refusal by the union to process the grievance.

It is true that a union stands in a fiduciary position as to the representation of its members:

"The fiduciary duty of fair representation in the negotiation, administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law as an obligation correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive bargaining agent despite the contrary wishes of a minority. . . . It has since been expanded as a principle of general application to collective bargaining representatives, who are required to 'serve the interest of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " (Quoting *Vaca v. Sipes*, 386 U.S. at 177) (Footnotes omitted). *Bazarte v. United Transportation Union* (3rd Cir. 1970), 429 F.2d 868, 871.

However, this fiduciary duty does not impose upon the union the responsibility of processing every grievance to arbitration:

"Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory manner, an employee does not have an absolute right to have any grievance taken to

arbitration, and the refusal of the union to take all grievances to arbitration does not per se amount to breach of the duty of fair representation. *Vaca, supra.*" *Lomax v. Armstrong Cork Co.* (5th Cir. 1970), 433 F.2d 1277, 1281.

The principle discussed in *Vaca* requires only that the union act fairly and in good faith in handling an employee's grievance. This duty of fair representation is not breached unless it is shown that the union's conduct towards an employee was arbitrary, discriminatory, or in bad faith. *Dishman v. Crain Brothers, Inc.* (W.D. Pa. 1976), 415 F.Supp. 277.

The union is entitled to exercise discretion as to which grievances it will take to arbitration:

"The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation but that opinion also makes it clear that the union may exercise discretion in deciding whether a grievance warrants arbitration. Even if an employee claim has merit, a union may properly reject it unless its action is arbitrary or taken in bad faith." (Citations omitted.) *Moore v. Sunbeam Corp.* (7th Cir. 1972), 459 F.2d 811, 820.

It has also been held that a showing of negligence or poor judgment on the part of the union is insufficient to prove a breach of its duty to fairly represent an employee. *Bazarte v. United Transportation Union, supra; House v. Mine Safety Appliance Co.* (D. Idaho 1976), 417 F.Supp. 939.

Although the holdings in the above two cases dealing with neglect by the union have been narrowed to some extent by the Supreme Court's decision in *Hines v. Anchor Motor Freight, Inc., supra,* we feel that an employee still bears the burden of proving more than the possibility of neglect by the union.

The undisputed evidence in this case shows that the union proceeded with plaintiffs' grievances up to the arbitration stage. It then filed a charge with the NLRB which was rejected for a lack of evidence. Following this, several more meetings were held between the union and Modernfold.

There is no evidence which would suggest that Modernfold and the union were conspiring against plaintiffs so as to render their

contractual remedies futile, as was the case in *Landaw v. Tucker Freight Lines, Inc.*, *supra.* Likewise, plaintiffs introduced no evidence to show that the union arbitrarily or in bad faith refused to proceed to arbitration. Finally, credible testimony was introduced by Modernfold to show that the union was given the opportunity to arbitrate the issue as to the timeliness of the arbitration request, and after consideration withdrew its complaint.

Plaintiffs have failed to show that the trial court, as a matter of law, arrived at an erroneous conclusion. Therefore the trial court's decision must be affirmed.

Judgment affirmed.

Lowdermilk and Robertson, JJ. concur.

NOTE—Reported at 373 N.E.2d 916.