PEARL VAUGHN AND MORRIS VAUGHN *v.* PEABODY COAL COMPANY, AMERICAN METAL CLIMAX, INC., SAMUEL JACKSON AND GENE N. FITHIAN

[No. 1-977A216. Filed May 24, 1978. Rehearing denied June 7, 1978. Transfer denied August 29, 1978.]

*George N. Craig, Craig, Craig & Yelton*, of Brazil, *Arthur Lee Hart, Hart & Bell* of Vincennes, for appellants.

*Gus Sacopulos, Sacopulos & Crawford*, of Terre Haute, *William P. Wooden, Douglas B. King, Wooden, Stark, McLaughlin & Sterner*, of Indianapolis, *Emison, Emison & Doolittle*, of Vincennes, for appellees.

ROBERTSON, J.—Plaintiffs-appellants Pearl and Morris Vaughn (Vaughns) filed a complaint against defendants-appellees Peabody Coal Company and Samuel Jackson (collectively referred to as Peabody), American Metal Climax, Inc. (Amax), and Gene Fithian (Fithian), for damages to their home, mental pain and suffering by Mrs. Vaughn, and punitive damages as a result of blasting operations conducted by Peabody and Amax. Prior to trial, Vaughns entered into a settlement with Amax and Fithian for the sum of $7,500. After trial to the court, the Vaughns recovered a verdict against Peabody in the amount of $10,000 for the damage to their home. That figure was reduced by the $7,500 already paid by Amax and Fithian, leaving Vaughns with a judgment against Peabody in the sum of $2,500. Judgment was rendered in favor of Peabody on the issues of punitive damages and Mrs. Vaughn's mental suffering and anxiety. Vaughns now appeal from a denial of their motion to correct errors.

Vaughns have raised three issues on appeal:

1.  The trial court's finding that Mrs. Vaughn suffered no "physical injury" as a result of Peabody's blasting operations is contrary to the evidence.

2.  The trial court's conclusion of law that Mrs. Vaughn cannot recover for her nervousness and mental anguish because it did not result from a physical injury is contrary to law.

3.  The trial court's award of damages is insufficient because punitive damages were not awarded.

The facts relevant to this appeal show that the Vaughns were the

owners of forty acres of land near Sullivan which was used both as a farm and residence. Mr. Vaughn testified that at the time they moved into their home in March, 1968, there were no apparent cracks or defects in the walls, ceilings or floors. Sometime in 1969, Peabody began blasting operations in the vicinity of the Vaughn home. Mr. Vaughn stated that the blasting operations began moving closer to his home in 1970 and that he began to notice structural damages to his house in the fall of that year.

The blasting operations by Peabody were continued for several years and caused a considerable amount of damage to the Vaughn home as a result of vibrations from each blast. Mr. Vaughn testified that cracks first appeared in the concrete slab floor of his garage and that after one particularly large blast a chuck of concrete was dislodged from the wall of the garage. Other cracks appeared in the gargage walls, the brick on the walls of the porch, the basement walls and the brick chimney. Mr. Vaughn further testified that after a blast, the entire house would often shake, dishes would rattle, and plaster and cement would fall from the walls and ceilings.

The Vaughns also introduced evidence to show that the blasts set off by Peabody caused extreme nervousness and anxiety in Mrs. Vaughn sufficient to cause her physical illness. Mrs. Vaughn testified that the continuous blasting upset her digestive system and caused diarrhea and other problems. She further stated that her nervousness, anxiety; and physical symptoms were sufficiently severe to require medical attention. Mrs. Vaughn also testified, in substance, that her physical symptoms were manifested in conjunction with the blasting and that these symptoms tended to subside when she was away from the blasting for a period of time.

The Vaughns called two physicians as medical witnesses to substantiate the complaints of Mrs. Vaughn's mental and physical suffering. Dr. Gene Moore, a neurologist, testified, on the basis of a three-hour examination and interview, that he felt Mrs. Vaughn was suffering from a traumatic neurosis as a result of the constant blasting operations. He further testified that Mrs. Vaughn's neurosis would most likely continue until she was removed from her present environment.

Also called as a medical witness was Dr. Donn Gossom, the physician

who was treating Mrs. Vaughn. He testified that he was attempting to treat her with various drugs, including a tranquilizer and an anti-depressant, but with only limited success. Dr. Gossom agreed with Dr. Moore that it was unlikely that Mrs. Vaughn's nervousness would improve to any substantial degree as long as she was near the blasting operation.

Vaughns first argue that the trial court's finding of fact number 1 that Mrs. Vaughn suffered no physical injury is contrary to the evidence. That disputed finding reads as follows:

> 1. The plaintiff's, Pearl Vaughn, health was impaired by the blasting operations of the defendants, Peabody Coal Company and Samuel Jackson, superintendent, and Amax Coal Company. She suffered nervousness and mental anguish but suffered no physical injury as a result.

As plaintiffs in a tort action, Vaughns had the burden of proof in this case as to any injuries suffered by them. Therefore, they are appealing a negative finding and must show that the finding of the trial court is contrary to law. *Thompson v. Modernfold Industries* (1978), 175 Ind.App. 686, 373 N.E.2d 916. In reviewing this issue, this Court will neither weigh the evidence nor judge the credibility of witnesses. We will consider only the evidence most favorable to the decision and all reasonable inferences flowing therefrom. It is only where the evidence and inferences lead to but one conclusion and the trial court has reached an opposite conclusion that the decision will be disturbed as being contrary to law. *Thompson v. Modernfold Industries, supra.*

Vaughns' argument in support of this issue consists of a review of the trial testimony regarding the manner in which Mrs. Vaughn's neurosis was manifested by physical symptoms. From this, Vaughns argue that a finding of physical injury is inescapable.

The problem with Vaughn's argument, however, is that they have misconstrued the trial court's finding. The trial court did not find that there were no physical symptoms of bodily dysfunction. Rather, the court made the finding that there was no evidence to show that Mrs. Vaughn suffered any *direct* physical injury (such as from flying debris, concussion, or vibration) as a result of Peabody's blasting operations. This finding, then, was the finding upon

which the trial court based its conclusion of law that Peabody was not liable for any nervousness of Mrs. Vaughn because there was no physical injury resulting directly from the impact of Peabody's blasting operations. See *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind. App. 315, 357 N.E.2d 247, rehearing granted on other grounds (1977), 369 N.E.2d 947. The evidence in this case showing that Mrs. Vaughn suffered no physical injury from the direct impact of Peabody's explosion is virtually uncontroverted, and the trial court's finding is therefore not contrary to law.

Vaughns next argue that the trial court was in error in concluding that Mrs. Vaughn could not recover for her mental suffering because it was not the result of a direct physical injury. In effect, the Vaughns are arguing that an exception should be made in this case to the application of what is commonly called the impact rule. In doing so they rely primarily on three cases: *Enos Coal Mining Company v. Schuchart* (1963), 243 Ind. 692, 188 N.E.2d 406; *Galbreath v. Engineering Construction Corp.* (1973), 149 Ind. App. 347, 273 N.E.2d 121; *Rotert v. Peabody Coal Company* (Mo. App. 1974), 513 S.W.2d 667, 75 A.L.R.3d 755.

The case of *Enos Coal Mining Company, supra,* also dealt with an action by homeowners to recover for damage to their home caused by the blasting operation of a nearby strip-mining company. However, there was no claim in *Enos,* as there is here, for damages for mental anxiety and suffering. In allowing a recovery for structural damages to the house, the Supreme Court held in that case that there was no logical reason to require impact from flying debris and that the concussion and vibration from the blasting was itself sufficient to constitute an actionable trespass.

The case of *Galbreath v. Engineering Construction Company, supra,* although involving a different factual circumstance, expanded the rule of liability set out in *Enos.* In *Galbreath,* blasting by an engineering company caused a rupture in a gas main. An employee of the gas company was then injured in a gas explosion while he was repairing the main. The court in that case, after an extended discussion of duty and proximate cause, adopted a rule of strict liability for damages caused by blasting.

Finally, Vaughns cite the case of *Rotert v. Peabody Coal Company,*

*supra*, which involved a factual situation almost identical to the present case. In *Rotert*, however, the Missouri Court of Appeals affirmed the trial court's judgment in favor of the Roterts for structural damages to their house, mental suffering of Mrs. Rotert (including the resulting physical symptoms), loss of consortium, and punitive damages.

In response to this argument, Peabody points out that it has long been the rule in this state that damages for mental pain, suffering, anxiety, etc., are recoverable only when such damages are accompanied by and are a result of a direct physical injury:

> It is not disputed that a contemporaneous physical injury is necessary for one to recover for shock or fright. We believe, however, that this is merely a minimum requirement for maintaining the action; that the complete rule would add that before recovery can be had for mental injury, including every form of distress, brooding, or fright, it must appear to be the natural and direct result of the physical injury, and not merely a remote consequence thereof. *Boston v. Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 428-429, 61 N.E.2d 326, 327.

This rule of law is commonly known as the impact rule. It is a settled rule of law in Indiana, having been applied in numerous cases and under different theories of recovery. *Jeffersonville Silgas Co., Inc. v. Wilson* (1972), 154 Ind. App. 398, 290 N.E.2d 113 (conversion); *Gaskins v. Runkle* (1900), 25 Ind. App. 584, 58 N.E. 740 (trespass); *Lake Erie & W.R.R. v. Johnson* (1922), 191 Ind. 479, 133 N.E. 732 (negligence); *Charlie Stuart Oldsmobile, Inc. v. Smith, supra*, (breach of warranty), and cases cited therein.

Although it is true that the precise question raised by this case has never been decided by an Indiana appellate court, we do not agree with the Vaughns' contention that cases such as *Jeffersonville Silgas* and *Charlie Stuart*, in which the impact rule was applied, are sufficiently distinguishable from the present case. It is true that other states have abandoned the impact rule in this context and allowed damages for mental suffering without proof of a direct physical injury.[1] However, none of the Indiana cases cited by Vaughn created

---

1. *Rotert v. Peabody Coal Company, supra; Ledbetter Bros., Inc. v. Jenkins* (1972), 126 Ga. App. 413, 190 S.E.2d 797; *Smith v. Aldridge* (1962 Mo. App.), 356 S.W.2d 532. *See also* cases cited in 75 A.L.R.3d 770.

any exception to the impact rule in blasting cases but, rather, held that a person engaged in blasting is responsible for any direct injuries caused by such blasting, whether by flying debris, concussion, or vibration. We do not feel that it is properly the function of this court to change such a well-established rule of law at this time. We therefore hold that the trial court in this case properly refused to award damages for mental suffering due to its finding that Mrs. Vaughn suffered no physical injury as a result of impact from Peabody's blasting operations.

Vaughns lastly argue that the trial court erred by not awarding punitive damages. In essence, Vaughns argue that because it was shown that Peabody's blasting did in fact cause damage to their house and because Peabody continued its blasting after being informed of this, the trial court was required to award punitive damages.

The trial court expressly stated in its findings and conclusions that Peabody's blasting operations "were carefully controlled and did not constitute willful, wanton or oppressive conduct." As Vaughns had the burden of proof on this issue, the trial court's findings constitute a negative judgment, and Vaughns must therefore show that the judgment is contrary to law. *Thompson v. Modernfold Industries, supra.*

The praecipe filed by Vaughns requested only the trial testimony of their witnesses but not that of Peabody's witnesses. The record is therefore not sufficient to allow this court to fully review the evidence in this case and decide whether the trial court's judgment is contrary to law. Therefore, this issue presents nothing for our review.

It is basic and fundamental that an appellant has the burden to provide the reviewing court with a record sufficient to permit consideration of the claimed error or errors. *Kerkhof v. Dependable Delivery, Inc.* (1975), 167 Ind. App. 248, 338 N.E.2d 513, 516.

In any event, an award of punitive damages is not required, as is argued by Vaughn, under the facts of this case. Punitive damages may be awarded when there is a finding of fraud, malice, gross negligence, or malicious or oppressive conduct on the part of the defendant. *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845; *Vernon Fire & Casualty Ins. Co. v. Sharp* (1976),

264 Ind. 599, 349 N.E.2d 173. The purpose of such damages, however, is not to compensate the plaintiff for any injury which he may have suffered but rather to punish the wrongdoer and deter future misconduct. *Hibschman Pontiac, Inc., supra; Vernon Fire & Casualty Inc. Co., supra.* There is conflicting evidence in the record before us as to whether Peabody was in fact guilty of malicious or oppressive conduct. Therefore, we cannot say that the trial court's finding was contrary to law, and it was not error to refuse to award punitive damages.

Judgment affirmed.

Lybrook, P.J. and Lowdermilk, J., concur.

NOTE — Reported at 375 N.E.2d 1159.