**GARY TEACHERS UNION LOCAL NO. 4, AMERICAN FEDERATION OF TEACHERS, Defendant-Appellant,**

v.

**GARY COMMUNITY SCHOOL CORPORATION OF INDIANA, By and Through ITS BOARD OF SCHOOL TRUSTEES, Plaintiff-Appellee.**

No. 45A03–8609–CV–262.

Court of Appeals of Indiana, Third District.

Aug. 26, 1987.

Hilbert L. Bradley, Gary, for defendant-appellant.

Thomas C. Granack, Granack & O'Rourke, Hammond, for plaintiff-appellee.

GARRARD, Presiding Judge.

This is an appeal from the trial court's judgment vacating an arbitrator's award in favor of the Gary Teachers Union, Local No. 4 (the Union) for breach of a collective bargaining agreement by the Gary Community School Corporation (the School). We affirm.

In 1985 the Indiana Department of Education adopted rules increasing weekly instructional time allocations for academic subjects taught in middle and junior high schools throughout the state. While this program was originally programmed for the 1985–86 school year, the Indiana Department of Education in March 1985

adopted a resolution delaying implementation until the 1986–87 school year in the event a school system experienced hardship in implementing the program.

At the beginning of the 1985–86 school year the School instituted in two of its six middle schools an experimental curriculum and scheduling program consistent with the academic subject area and time allotments provided by the new rules. This experimental program increased the number of instructional class periods per day from five to six but reduced the individual class period from fifty-five minutes to forty minutes. The program also increased the total daily teacher preparation and conference period from one, fifty-five minute period to two, forty minute periods. These programs were, in fact, quite similar to the experimental programs conducted by the School with overwhelming faculty approval. However, while the Union had approved the two prior programs it refused to approve this one.

Pursuant to the grievance procedure provided in the parties' collective bargaining agreement the Union submitted a grievance concerning the implementation of the experimental program to arbitration, alleging that the program was inaugurated without Union approval in violation of the collective bargaining agreement. The arbitrator, after hearing, concluded that the School had breached the collective bargaining agreement by implementing the program without the permission of the Union, but that it would not be appropriate to merely order a cessation of the continuing breach "in view of the fact that the delicate minds of the children are involved in an extremely significant developmental stage of their lives." The arbitrator therefore determined that the School could continue the experimental program for the balance of the school year and ordered that it should pay to "those persons involved in that program who are Union members" an experimental bonus of 10% over and above their wages paid pursuant to the terms of the current collective bargaining agreement, retroactive to the first day of work under the new program.

The School filed in the trial court a motion to vacate the arbitrator's award as void and against public policy. The trial court subsequently vacated the award for the reason that "the arbitrator exceeded his powers in making said award to the [Union] and that the award is not amenable to being corrected by the court."

The dispositive question presented by the Union's appeal is whether the arbitrator was entitled to fashion the remedy he imposed.

First, we assume *arguendo* that under the provisions of the collective bargaining agreement the School was not entitled to implement the experimental program without the Union's consent.[1]

Concededly, no provision in the agreement expressly authorizes a particular remedy for the breach found by the arbitrator. Instead, he and the Union base the propriety of his award upon a provision in the grievance procedure as set forth in the collective bargaining agreement. That provision states:[2]

"20.—If the contract has been violated, but the language of the contract does not suggest an appropriate remedy, the aggrieved may continue to process the grievance in an effort to attain an appropriate remedy. When a grievance is processed to the third stage of the grievance procedure, the arbitrator shall have the authority to fashion an appropriate remedy."

Our decisions have recognized as general propositions that an arbitrator draws his authority from the terms of the agreement, and that since arbitration arises from contract, the parties are generally free to define for themselves what subjects may be arbitrated, what remedies may be

---

1. Provisions in the agreement granted teachers "one continuous fifty-five (55) minute period ... for the purpose of preparation and conferences," and declared that any programs proposed which deviated from the terms of the contract would be implemented only upon approval of the board of school trustees and the Union.

2. Article IV, collective bargaining agreement.

employed and the extent to which arbitration awards must conform to established legal principles. *Ft. Wayne Comm. Schools v. Ft. Wayne Ed. Assoc.* (1986), Ind.App., 490 N.E.2d 337, 341; *I.B.E.W., Local 1400 v. Citizens Gas & Coke Utility* (1981), Ind.App., 428 N.E.2d 1320, 1326.

On the other hand, in its authorization for public sector collective bargaining the legislature clearly recognized distinctions and imposed limitations not present in the relationship between private employers and their employees. *See* IC 20–7.5–1–1; *Eastbrook Comm. Schools Corp. v. I.E.E.R.B.* (1983), Ind.App., 446 N.E.2d 1007. Specifically, IC 20–7.5–1–1(d) states:

"(d) The relationship between school corporation employers and certificated school employees is not comparable to the relationship between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the state rights guaranteed them by the Indiana state constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) the Indiana general assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees."

Thus, in partial implementation of these policies the legislature imposed limitations upon the grievance procedures that parties to a collective bargaining agreement under the statute might agree to:

"A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, *but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract.*" (our emphasis)

IC 20–7.5–1–4 (in pertinent part).

■ The provision in the collective bargaining agreement before us authorizing an arbitrator to fashion whatever remedy he deemed appropriate was contrary to law, and the arbitrator's action pursuant thereto in rewriting the agreement of the parties to award a ten percent (10%) bonus to certain teachers in the two affected schools was contrary to law and without lawful authority.[3]

In addition, it appears that the award was not amenable to being corrected by the trial court. *See* IC 34–4–2–13; *I.B.E.W., supra.*

The judgment vacating the award is affirmed.

STATON, J., and SHIELDS, P.J., concur.

---

**3.** We, therefore, need not treat the separate questions of whether the award could properly be limited to only those affected teachers who were Union members, or whether the ten percent (bonus) was, in fact, an award of punitive damages and beyond the arbitrator's authority for that reason. *See School City of East Chicago v. East Chicago Fed. of Teachers* (1981), Ind. App., 422 N.E.2d 656, 663. As to the first question, the description of the bargaining unit in Article I of the agreement does not purport to limit its application to Union members while Article III expresses that neither the School nor the Union will discriminate against any teacher on the basis, *inter alia,* of membership in any "teacher's organization."