**COMMISSIONER OF LABOR,**
Appellant–Plaintiff Below,

v.

**TALBERT MANUFACTURING
COMPANY, Appellee–
Defendant Below.**

No. 37A03–9109–CV–00267.

Court of Appeals of Indiana,
Third District.

June 16, 1992.

Karla A. Mantia, Indiana Dept. of Labor, Indianapolis, for appellant-plaintiff below.

Jack H. Rogers, Terry W. Dawson, Barnes & Thornburg, Indianapolis, for appellee-defendant below.

STATON, Judge.

Talbert Manufacturing Co. discharged Randle Bougher, an employee and a member of the United Steelworkers of America Local 6928, for allegedly violating several work rules. Before the discharge, Bougher had been suspended for five days. Later, Bougher filed a grievance contesting his suspension under the procedures set forth in the contract between Talbert and the Union. Under the terms of the contract, Talbert had the right to convert the suspension to a discharge. It did and Bougher was discharged.

On June 29, 1990, the Commissioner of Labor for the State of Indiana (Commissioner) filed a complaint on Bougher's behalf, alleging that Talbert discharged Bougher for filing a complaint under the Indiana Occupational Safety and Health Act (IOSHA), in violation of IND.CODE

22–8–1.1–38.1 (1988). While this lawsuit was pending, the parties submitted the grievance to arbitration, in accordance with the terms of the contract. In a decision issued March 5, 1991, the arbitrator denied Bougher's grievance claim. Thereafter, the trial court granted Talbert's motion for summary judgment, ruling that the doctrines of *res judicata* and collateral estoppel barred the Commissioner's claim by virtue of the binding decision entered against Bougher in arbitration. The Commissioner now appeals, contending that the entry of summary judgment in this case was improper.

We reverse.

On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *trans. denied.*

■ The Commissioner first argues that summary judgment was inappropriate in this case because his complaint is subject to a well-recognized exception to the doctrines of collateral estoppel and *res judicata.* In support of this position, the Commissioner cites to a trilogy of U.S. Supreme Court cases dealing with this issue: *Alexander v. Gardner–Denver Co.* (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147; *Barrentine v. Arkansas–Best Freight System, Inc.* (1981), 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641; and *McDonald v. City of West Branch, Mich.* (1984), 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302. Talbert contends that these cases are irrelevant because the Commissioner, by failing to challenge the factual findings of the arbitrator in the grievance proceeding, did not come forth with specific facts to establish a genuine dispute of material fact under Ind.Trial Rule 56(C).

In *Gardner–Denver,* the petitioner filed a racial discrimination complaint with the Equal Employment Opportunity Commission (EEOC) under Title VII of the 1964 Civil Rights Act following his discharge by the respondent, his employer. Prior to filing this complaint, however, the petitioner filed a grievance under the collective-bargaining agreement between his union and the employer. The arbitrator found against the petitioner, ruling that the discharge was "for cause." Later, after the EEOC determination that there was no reasonable ground to believe that a violation had occurred, the petitioner sued the employer in federal district court, alleging that his discharge resulted from a racially discriminatory employment practice. The district court granted the employer's motion for summary judgment, concluding that the petitioner had no right to sue because he was bound by the prior arbitral decision, and the court of appeals affirmed.

A unanimous United States Supreme Court reversed, concluding that the antidiscrimination provisions of Title VII were designed to supplement, rather than supplant, existing laws relating to employment discrimination. The Court noted that Title VII vests federal courts with plenary powers to enforce statutory requirements, and that enactments in this area evinced a general intent to provide parallel or overlapping remedies against discrimination. *Id.* at 47–48, 94 S.Ct. at 1019. As the Court held, "Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id.* at 48–49, 94 S.Ct. at 1020. The Court further noted:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results

from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 49–50, 94 S.Ct. at 1020. In addition, the Court in *Gardner–Denver* observed that an arbitrator is generally without authority or the expertise to invoke or interpret statutes, but merely interprets the contract between the parties. This authority to resolve only questions of contractual rights remains regardless of whether these rights are similar to, or duplicative of, the rights accorded by statute. *Id.* at 53–54, 94 S.Ct. at 1022.

Similarly, in *Barrentine*, the Supreme Court rejected the argument that an arbitral decision precluded a subsequent suit based on the same underlying facts alleging a violation of the minimum wage provisions of the Fair Labor Standards Act (FLSA). The Court reasoned that, while the Labor Management Relations Act encourages employees to promote their interests *collectively* (e.g., by entering into a collective-bargaining agreement), "the FLSA was designed to give specific minimum protections to *individual* workers[.]" 450 U.S. at 739, 101 S.Ct. at 1444 (emphasis in original). Thus, reasoned the court, the judiciary should defer to arbitration where the employee's claim is based on rights arising out of the collective-bargaining agreement, but different considerations apply where the claim is based on rights arising from a statute designed to provide minimum substantive guarantees to individual workers. *Id.* at 737, 101 S.Ct. at 1443. The Court also noted that the FLSA erects no procedural barriers nor creates an alternative forum for enforcement of such statutory rights, evincing an intent to grant individual employees broad access to the courts. *Id.* at 740, 101 S.Ct. at 1444.

Finally, in *McDonald,* the Supreme Court held that an unappealed arbitration determination, filed in accordance with the terms of a collective-bargaining agreement, had no preclusive effect in a civil rights suit filed under 42 U.S.C. § 1983. Relying extensively on *Gardner–Denver* and *Barrentine,* the Court concluded that "according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide." 466 U.S. at 292, 104 S.Ct. at 1804.

Upon facts similar to those in the case before us, the Seventh Circuit Court of Appeals held that a final arbitral decision is no bar to a subsequent lawsuit invoking the antidiscrimination provisions of the Federal Occupational Safety and Health Act (OSHA). *Marshall v. N.L. Industries, Inc.* (7th Cir.1980), 618 F.2d 1220. In *Marshall,* an employee filed a complaint with OSHA after being discharged for refusing to work in conditions he believed were unsafe. He also filed a grievance under the collective-bargaining agreement between his union and the employer. After arbitration had concluded, the Secretary of Labor commenced a lawsuit seeking an injunction against further OSHA violations, posting of notices, and back pay and vacation pay for the employee. The district court, acknowledging the holding in *Gardner–Denver,* nonetheless dismissed the suit, ruling that the employee waived the right to statutory relief.

The court of appeals reversed, holding that the *Gardner–Denver* case controlled despite the employee's partial waiver. The court further found that, like Title VII (at issue in *Gardner–Denver*), OSHA was enacted "to mobilize the resources of the federal government in an effort to eradicate a specific group of problems confronting workers nationwide." 618 F.2d at 1222. The *Marshall* court observed that "OSHA legislation was intended to create a separate and general right of broad social importance existing beyond the parameters of an individual labor agreement and susceptible of full vindication only in a judicial forum." *Id.*

Similar policy considerations are demonstrated in the provisions of IOSHA. For instance, IC 22–8–1.1–2 mandates that employers establish and maintain work conditions that are "reasonably safe and healthful for employees," and free from recognized hazards that may cause death or serious physical harm to employees. This policy is similar to that of the FLSA, found

compelling by the Court in *Barrentine,* which was enacted to protect all covered workers from "labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 450 U.S. at 739, 101 S.Ct. at 1444 (quoting 29 U.S.C. § 202(a)). In fact, Indiana has adopted all federal OSHA standards, unless replaced by a state-promulgated standard that is at least as effective in providing a safe and healthful workplace. IC 22–8–1.1–13.1. Finally, the Commissioner is *required* to bring an action in the circuit courts of Indiana if, after an investigation, he determines that an employer has violated the anti-discrimination provision of IC 22–8–1.1–38.1. This statute reads in pertinent part:

> (a) No person shall discharge or in any way discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

> \*   \*   \*   \*   \*   \*

> Upon receipt of such complaint, the commissioner shall cause such investigation to be made as he deems appropriate. If after such investigation, the commissioner determines that the provisions of this section have been violated, he, through the attorney-general, *shall,* within one hundred twenty (120) days after receipt of said complaint, *bring an action in the circuit courts of Indiana. The circuit courts of Indiana shall have jurisdiction to restrain violations of this section and order all appropriate relief, including rehiring, or reinstatement of the employee to his former position with back pay, after taking into account any interim earnings of the employee.*

IC 22–8–1.1–38.1 (emphasis added).

■ This provision is nearly identical to its federal counterpart, under which the Secretary of Labor filed suit in *Marshall.*

*See* 29 U.S.C.A. § 660(c). We believe that the rationale employed by the federal judiciary is applicable to this case. Like Title VII, the FLSA, § 1983, and OSHA, Indiana's OSHA provisions were enacted to marshal the resources of the government "in an effort to eradicate a specific group of problems confronting workers[.]" *Marshall, supra,* at 1222. A collective-bargaining agreement is entered to protect the labor force as a whole, while the statutes in question are designed to benefit individual workers, particularly those who have filed a complaint with IOSHA. The Commissioner, proceeding under IC 22–8–1.1–38.1, is invoking a statutory right, as opposed to the contractual rights binding parties to a collective-bargaining agreement. The plain language of IC 22–8–1.1–38.1 evinces an intent to grant individuals broad access to the courts of Indiana. Therefore, we must conclude, as did the U.S. Supreme Court in *Gardner–Denver, Barrentine* and *McDonald,* and the court in *Marshall,* that the rights afforded by the statute are designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

We are not persuaded by Talbert's argument that summary judgment was appropriate because the Commissioner failed to raise an issue of material fact with respect to the arbitrator's findings. Talbert has put the proverbial cart before the horse by claiming that *Gardner–Denver* and its progeny are irrelevant because there is no dispute of material fact; rather, the lack of a material fact in dispute is irrelevant because the cases originating with *Gardner–Denver* are applicable. Talbert was not entitled to judgment as a matter of law. T.R. 56(C).

Moreover, Talbert's contention that the Commissioner was bound to defer to the arbitrator's decision is meritless. The Courts in *Gardner–Denver, Barrentine* and *McDonald* recognized the federal policy favoring arbitration of labor disputes, yet held that this policy would not be subverted by affording the individual employee an additional judicial remedy. *See, e.g.,*

*Gardner–Denver, supra,* at 54–55, 94 S.Ct. at 1023.

In its order, the trial court relied upon the recent decision in *Gilmer v. Inter-state/Johnson Lane Corp.* (1991), —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26, for the proposition that a party having made the bargain to arbitrate should be held to it unless Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. However, the Commissioner correctly observes that the Court in *Gilmer* made several important distinctions between the case before it and the *Gardner–Denver* line of cases.

> First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.

*Gilmer, supra,* at ——, 111 S.Ct. at 1657 (citation omitted). Thus, the *Gilmer* case is inapplicable to the case at bar.[1]

Accordingly, we hold that the completed arbitration proceeding does not bar a subsequent trial *de novo* under Indiana's OSHA laws. Our resolution of this issue is dispositive of Talbert's remaining arguments urging affirmance of the trial court.

■ Although we conclude that the trial court erred by giving preclusive effect to arbitration in this case, this does not necessarily render the transcript from the arbitration proceeding inadmissible at trial. As with other evidentiary materials, it should be left to the trial court's discretion in admitting the arbitral decision and according it such weight as is appropriate. The weight given to such a decision must be determined on a case-by-case basis, mindful of the following considerations espoused by the Court in *Gardner–Denver:*

> Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with [IOSHA], the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's [IOSHA] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record.

415 U.S. at 60, 94 S.Ct. at 1025 n. 2. While it is true that the arbitral decision may ultimately sway the trier of fact, our legislature has indicated that the courts of Indiana have a duty to assure full availability of the judicial forum. *See id.*

Reversed.

---

1. The dissent describes the *Gilmer* Court as deferring to the *Gardner–Denver* trilogy in the form of "tenuous" points of distinction. *Infra,* at 1235. Yet these same points of distinction led a unanimous Supreme Court to conclude that the binding arbitration procedures of a collective bargaining agreement under the Railway Labor Act did not preclude an employee's individual action for statutory damages under the Federal Employers' Liability Act. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell* (1987), 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563. In *Buell,* the court recognized that *Gardner–Denver*

and its progeny allowed the assertion of statutory rights, "notwithstanding the strong policies encouraging arbitration[.]" *Id.* at 565, 107 S.Ct. at 1415. Inasmuch as the Court decided *Buell* two years *after Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (the case—along with *its* progeny—relied upon in the dissent), we agree with the U.S. Supreme Court in *Buell* and *Gilmer* that the distinctions are substantial enough to warrant a different outcome in cases arising out of collective bargaining agreements.

**1234** ■

HOFFMAN, J., concurs.

SULLIVAN, J., dissents and files separate opinion.

SULLIVAN, Judge, dissenting.

The wrongful discharge case before us involves a collective bargaining contract and is governed by federal law. *Thompson v. Modernfold Industries* (1978) 1st Dist., 175 Ind.App. 686, 373 N.E.2d 916.

The majority opinion relies upon a trilogy of cases from the United States Supreme Court between 1974 and 1984: *Alexander v. Gardner–Denver Co.* (1974) 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147; *Barrentine v. Arkansas–Best Freight System, Inc.* (1981) 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641; and *McDonald v. City of West Branch, Mich.* (1984) 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302. My dissent is prompted by a more recent United States Supreme Court decision, *Gilmer v. Interstate/Johnson Lane Corp* (1991) — U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26. The *Gilmer* Court held that an Age Discrimination in Employment discharge claim was properly subjected to compulsory arbitration and noted that "in recent years" various statutory claims were held subject to enforceable arbitration. 111 S.Ct. at 1652. The cases cited were all subsequent to *Alexander, Barrentine,* and *McDonald.*

Justice White's majority opinion noted that as a general proposition,

"[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 111 S.Ct. at 1652, quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985) 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444.

In the case before us, the burden is upon the claimant, i.e. the Commissioner of Labor, to show that Congress intended to preclude waiver of a judicial forum for resolution of an allegedly retaliatory discharge involving a IOSHA report made by the employee, Bougher. In discerning whether such intention is reflected in the statutory scheme, the *Gilmer* Court made clear that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." 111 S.Ct. at 1652, quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765.

Indiana policy gives similar deference favoring methods of dispute resolution which do not require full access to the judicial system. We are all cognizant of the impetus toward, and the need for, alternative dispute resolution. To this end, much legislative, judicial and private-sector input has been given to a solution to the litigation explosion. In the Preamble to the formal Indiana Rules for Alternative Dispute Resolution, our Supreme Court acknowledges that "the interests of the parties can be preserved in settings other than the traditional judicial dispute resolution method." It would appear, therefore, that the fear expressed in earlier United States Supreme Court cases concerning a basic inadequacy or unfairness in the arbitration process has been largely dispelled.

Gilmer had argued in his appeal that arbitrators do not command the power to award broad equitable relief which courts possess, i.e., "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter...." 29 U.S.C.A. § 626(b). The Fourth Circuit, in an opinion which was affirmed by the Supreme Court decision, *supra,* observed: "Arbitrators enjoy broad equitable powers. They may grant whatever remedy is necessary.... Arbitrators may, for instance, order reinstatement...." *Gilmer v. Interstate/Johnson Lane Corp.* (1990) 4th Cir., 895 F.2d 195, 199. In EEOC actions under 29 U.S.C.A. 626(b), as in *Gilmer,* reinstatement and back wages are within the scope of affordable relief. *See, e.g., Tennes v. Mass., Dept. of Revenue* (1991) 7th Cir., 944 F.2d 372. It must be noted that the law which controls us in this regard, in the instant case, differs from the law which is applicable to Indiana school corporation collective bargaining arbitration. In the school contract disputes, courts have held that the arbitrator's authority to fashion

relief is extremely limited. See *Gary Teachers Union Local No. 4, American Federation of Teachers v. Gary Community School Corporation of Indiana By and Through its Bd. of School Trustees* (1987) 3d Dist. Ind.App., 512 N.E.2d 205, and cases therein cited.

The Fourth Circuit concluded in *Gilmer* that *Alexander, Barrentine,* and *McDonald* were inapposite because in none of the three did the court give consideration to the "federal policy favoring arbitration". 895 F.2d at 201. The court also pointed out that "the more recent trilogy" of the Supreme Court, i.e., *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., supra,* 473 U.S. 614, 105 S.Ct. 3346; *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185; and *Rodriguez de Quijas v. Shearson/American Express, Inc.* (1989) 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526, all relied upon later by the Supreme Court in affirming the Fourth Circuit decision, rejected arguments which formed the underlying rationale of *Alexander, Barrentine,* and *McDonald.* This rationale can be described as a basic distrust of the arbitration system and a strong preference for judicial resolution of statutory claims.

It appears that Justice White, in crafting an opinion commanding a majority in *Gilmer,* felt that the transition from the philosophy reflected in *Alexander, Barrentine, McDonald* could not be easily or tactfully made without giving some deference to those decisions in the form of points of distinction. The principle distinction drawn was that contract-based claims differ from statutory claims. The distinction is tenuous at best and is simply without foundation.

It is suggested that an arbitrator may only resolve issues which arise from the employment contract itself, and for that reason has no authority to decide whether a particular discharge is violative of statutory discrimination provisions. I agree that the arbitrator's prerogatives are circumscribed by the collective bargaining contract in question, but that contract carries within it the anti-discrimination policies which underlie the statutory claim sought to be asserted by the Commissioner of Labor here.

It is unquestioned that labor contracts may not contain discriminatory provisions. *Chrapliwy v. Uniroyal, Inc.* (1977) N.D.Ind., 458 F.Supp. 252. It is equally true that anti-discrimination provisions of statutes are read into every contract, including labor contracts. This conclusion is necessitated by the principle that existing law is read into every contract as if the statutory provision were expressly incorporated within the terms of the contract. *Evansville–Vanderburgh School Corporation v. Moll* (1976) 264 Ind. 356, 344 N.E.2d 831; *Ethyl Corporation v. Forcum–Lannom Associates, Inc.* (1982) 4th Dist. Ind. App., 433 N.E.2d 1214. Accordingly, matters of discrimination in employment terminations are arbitrable and within the resolution prerogative of collective bargaining arbitrators.

Be that as it may, the substantial dilution of *Alexander, Barrentine* and *McDonald* is clearly contained within the recognition that arbitration focuses upon the resolution of specific disputes between parties, just as does judicial resolution of such matters.

Although the Fourth Circuit observed that arbitration under collective bargaining, as here, *might* jeopardize the protections to the individual claimant if he was represented by the labor union, I do not subscribe to the view that collective bargaining arbitration is *presumed* to be suspect and unfair. I am unable to subscribe to the determinative effect given to the speculation posed in *Alexander, supra,* 94 S.Ct. at 1024 n. 19, also found in *Barrentine* and *McDonald,* that "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." To be sure, such subordination of interests may occur. However, if such occurrences predominated or were the rule rather than the exception, a provision for binding arbitration with union representation under a collective bargaining agreement would necessarily be held invalid as contrary to public policy. *See Sheet Metal Workers Local Union No.*

*20 v. Baylor Heating and Air Conditioning, Inc.* (1989) 7th Cir., 877 F.2d 547; *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers* (1984) 7th Cir., 746 F.2d 1316.

In the event that a particular arbitration has been tainted by misconduct or less than fair representation of the employee's interests, recourse is available. *Harrison v. Chrysler Corp.* (1977) 7th Cir., 558 F.2d 1273; *Grimes v. Louisville and Nashville R. Co.* (1984) S.D.Ind., 583 F.Supp. 642, *aff'd* 767 F.2d 925, *cert. denied* (1986) 476 U.S. 1160, 106 S.Ct. 2280, 90 L.Ed.2d 722.

This scenario is clearly contemplated in Indiana. In *Thompson v. Modernfold Industries, supra,* 373 N.E.2d at 916, the court held that a discharged employee could not avail himself of the judicial process although his union had requested, but had never obtained, arbitration of the grievance. The employer's motion to dismiss the complaint had been granted by the trial court and our First District affirmed stating:

> "There is no evidence which would suggest that Modernfold and the union were conspiring against plaintiffs so as to render their contractual remedies futile, as was the case in *Landaw v. Tucker Freight Lines, Inc., supra* [148 Ind.App. 48, 263 N.E.2d 756 (1970)]. Likewise, plaintiffs introduced no evidence to show that the union arbitrarily or in bad faith refused to proceed to arbitration. Finally, credible testimony was introduced by Modernfold to show that the union was given the opportunity to arbitrate the issue as to the timeliness of the arbitration request, and after consideration withdrew its complaint.
>
> Plaintiffs have failed to show that the trial court, as a matter of law, arrived at an erroneous conclusion. Therefore the trial court's decision must be affirmed." 373 N.E.2d at 923.

In the case before us, the Commissioner of Labor has not demonstrated, or even suggested, that the arbitration process was tainted.

The foregoing case analysis and chronology leads to my conclusion that the federal law makes appropriate and applicable an employee-employer agreement to make arbitration of employment termination final and binding. Except when fraud, collusion, misconduct, or unfair union representation has been demonstrated, the binding nature of the arbitration decision precludes resort to a judicial forum for litigation of the same wrongful discharge claim, whether founded upon an allegation of discrimination or otherwise.

An argument that a claimant may bypass or waive a mandatory grievance and arbitration process by filing a civil action was rejected in *Serstel Corporation v. Gibbs* (1981) 3d Dist.Ind.App., 417 N.E.2d 372. It would follow, conversely, that a claimant may not by filing a civil action thereby avoid a defense that the employee has failed to exhaust exclusive grievance and arbitration procedures. In *Gibbs,* the court noted that in *Rosen v. Eastern Airlines, Inc.* (1968) 5th Cir., 400 F.2d 462, *cert. denied* (1969) 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560, discharged airline flight attendants, having previously and unsuccessfully submitted to the non-mandatory grievance procedure, were barred from again litigating the matter through the courts. A similar result should obtain in this case.

The majority opinion here reasons that the *Alexander* trilogy rationale necessitates a holding that principles of *res judicata* and collateral estoppel are not applicable to arbitration determinations. My view is to the contrary.

*Res judicata* principles are applicable to arbitration awards. *Sheet Metal Workers Local 20 v. Baylor Heating and Air Conditioning Co.* (1988) S.D.Ind., 688 F.Supp. 462, *aff'd* 877 F.2d 547. This premise may be deduced from the fact that federal and state arbitration statutes provide that, unless an aggrieved party files a Motion to Vacate an arbitration award within 90 days, the award is confirmed by operation of law. I.C. 34–4–2–12 (Burns Code Ed. 1986). The premise also follows merely from the contract provision which, with some exceptions, makes the arbitration decision final and binding.

The majority here sees no significance in the *Gilmer* decision. At page 1233 in footnote 1, the majority suggests that to the extent that the *Alexander, Barrentine,* and *McDonald* line of reasoning was undermined by *Gilmer,* it was resurrected by *Atchison, Topeka & Sante Fe Ry. Co. v. Buell* (1987) 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563. It should be noted, however, that although *Buell* was decided after the *Mitsubishi Motors* case, *supra,* it was decided some four years before *Gilmer,* as well as before the other two cases relied upon in *Gilmer.* In my view, therefore, *Gilmer* has not been diluted by *Buell.*

More importantly, however, *Buell* supports the rationale contained in *Gilmer* and the other cases which I find persuasive. *Buell* involved an FELA action brought in the federal district court, notwithstanding the Railway Labor Act which contained provision for binding arbitration. The Ninth Circuit Court of Appeals held that the employment harassment claim made by Buell in federal court was not subject to arbitration and for that reason the law suit was appropriate. *Buell v. Atchison* (1985) 9th Cir., 771 F.2d 1320, 1323–24. However, in *Buell,* the claim had never been subjected to arbitration. Accordingly, Buell had not had his claim "litigated" twice, as did Bougher in the case before us. Furthermore, the FELA is more in the nature of our Workers Compensation provisions. Both pieces of legislation were designed to supplant common law liability of an employer to an employee for injury caused by the negligence of the employer. In keeping with that purpose, the Federal Employers' Liability Act expressly prohibits employers from entering into any contract which would limit FELA liability. In this regard, therefore, the wrongful discharge claim made by Bougher is wholly unlike the FELA claim made by Buell.

These points of distinction, although significant, are not nearly so compelling as the fact that in *Buell,* the Supreme Court recognized and unmistakably, though not explicitly, approved the Ninth Circuit's position which held that wrongful discharge cases fall within the exclusive domain of the grievance procedures and binding arbitration.

The case before us involves a wrongful discharge claim which was filed after the claimant had lost that claim in arbitration. This wrongful discharge claim, even under *Buell,* would not be cognizable in the judicial forum.

For all the foregoing reasons I dissent from the decision and opinion of the majority. I would affirm the summary judgment entered against the Commissioner of Labor.