**COMMISSIONER OF LABOR and the Board of Safety Review, Appellants–Respondents,**

v.

**GARY STEEL PRODUCTS CORPORATION, Appellee–Petitioner.**

No. 49A02–9309–CV–474.

Court of Appeals of Indiana, Second District.

Nov. 30, 1994.

Pamela Carter, Atty. Gen., Richard E. Shevitz, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellants.

Douglas J. Heckler, Barnes & Thornburg, Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellants-respondents, the Commissioner of Labor (Commissioner) and the Board of Safety Review (Review Board) (collectively "IOSHA"), appeal from a judgment reversing their Final Order and decision finding appellee-petitioner Gary Steel Products Corporation (Gary Steel) to have committed a series of safety violations. The facts pertinent to this appeal are summarized below.

Gary Steel is a manufacturer of furnace ductwork with its plant located in Gary, Indiana. The company has three main manufacturing lines. The flex duct manufacturing line, made up of approximately eight employees, is located in the basement of the plant. In early October 1989, insulation material from pipes hanging from the ceiling began to break off and accumulate on the basement floor, equipment, and product.

In mid-September 1989, Theodore Primich, Gary Steel's president, arranged to have a local construction excavator, Percell McQueen, remove the insulation. At the time, the issue of whether the insulation material might contain asbestos was discussed. The work performed the weekend of October 1, 1989, proved to be unsatisfactory. Although most of the insulation had been removed before the flex duct production employees (production employees) arrived at work on Monday, October 2, 1989, the basement was littered with a thick layer of insulation debris on the floor, equipment, and product. When the production employees refused to work in the basement, Gary Steel recruited several of its maintenance employees to clean up the mess.

Cleanup began on October 2, 1989, and ended on October 3, 1989. The maintenance employees used brooms, a sweeping compound called "floor sweep," heavy duty white garbage bags, gloves and dust masks, on an optional basis, to clean the basement. At the end of the day, between thirty and fifty bags containing the insulation material were filled. Before the maintenance employees went home, Gary Steel gave them new work clothes and ordered them to throw their old work clothes away.

The next day, Tyvac suits were provided to the employees and cleanup occurred in a similar manner as the day before. By the time they completed their work, ten addition-

al bags of debris had been filled. Although cleanup was completed, additional dust and debris remained, so the production employees continued in their refusal to return to work.

On October 4, 1989, a licensed asbestos abatement contractor was hired by Gary Steel to inspect the plant and to finish removing the insulation. The contractor informed Primich that the insulation should have not been removed but instead sealed. While the contractor was working to remove the remaining asbestos the following weekend, the Commissioner of Labor, by Compliance Officer Wayne Glotfelty, inspected the plant. After the insulation was completely removed and in the presence of Glotfelty, the asbestos contractor conducted an air sample and bulk sample test which confirmed the existence of asbestos in the insulation.

Later, the debris was transferred from the white garbage bags supplied by Gary Steel, into proper six-millimeter, impermeable plastic bags normally used for asbestos removal. During a subsequent closing conference, discussions occurred between Gary Steel and Glotfelty regarding Gary Steel's use of respirators. Gary Steel provided Glotfelty with a copy of the company's written instructions on respirator use.

In December 1989, the Commissioner of Labor issued a safety order and notice of penalty charging Gary Steel with a series of serious violations and recommended a fine of $21,000.00. In April 1990, nine of the violations were upgraded in classification from "serious" to "knowing" pursuant to IND. CODE § 22–8–1.1–27.1 (1988 Ed.).

In December 1990, the case was heard by an Administrative Law Judge (ALJ), who prepared recommended findings of fact and conclusions of law. Applying 29 C.F.R. § 1926.58, *et seq.* in conjunction with IND. CODE § 22–8–1.1–27.1, the ALJ found Gary Steel had knowingly committed eight of nine [1] alleged safety violations. Consequent-

ly, he recommended the Review Board impose penalties of $10,000.00 per each violation, for a fine totalling $80,000.00. On May 28, 1992, the Review Board adopted the ALJ's findings as its own and entered a Final Order.

Gary Steel sought judicial review of the Final Order in June 1992. After reviewing the evidence, the trial court reversed the Final Order in its entirety. This appeal ensued.

On appeal, IOSHA raises two issues which we consolidate into one: whether the trial court properly reversed each of the eight violations found to exist by IOSHA.

The trial court reversed the Final Order finding, *inter alia,* IOSHA misconstrued IND.CODE § 22–8–1.1–27.1, Gary Steel's due process rights were violated by IOSHA's actions, IOSHA engaged in administrative rulemaking without resorting to proper procedure, Gary Steel was cited under the wrong standard, and as to the last violation, IOSHA's finding was unsupported by facts in the record.

■■■ First, IOSHA claims the trial court improperly found error in its decision to redefine the term "knowing," [2] for purposes of IND.CODE § 22–2–8–1.1–27.1(a). In reviewing a decision of an administrative agency, neither the trial court nor this Court on appeal may substitute its own judgment or opinion in place of the agency's in those matters within the scope of the agency's discretion and authority. *Clarkson v. Department of Ins., etc.* (1981), Ind.App., 425 N.E.2d 203, 207. Further, an administrative agency's reasonable interpretation of a silent or ambiguous statute, which it is charged with enforcing, will be allotted considerable deference. *Indiana DNR v. Krantz Bros. Const.* (1991), Ind.App., 581 N.E.2d 935, 939. Only if an agency misconstrues the statute may the trial court reverse the agency's action as being arbitrary and capricious. *Pea-*

---

1. The ALJ dismissed the remaining alleged violation on the basis that Gary Steel was cited under the wrong regulation.

2. Prior to 1978, our statute mirrored the language of 29 U.S.C. § 666 exactly. However, in 1978 our legislature deleted all references to

"willful" and substituted the term "knowing" in its criminal statutes bringing them into line with sections of the revised criminal code. *State v. Kokomo Tube Co.* (1981), Ind.App., 426 N.E.2d 1338, 1344.

*body Coal Co. v. Dept. of Nat. Resources* (1992), Ind.App., 606 N.E.2d 1306, 1308.

It is without dispute that IOSHA is charged with applying IND.CODE § 22–8–1.1–27.1. Likewise, neither party disputes the trial court's finding that the Occupational Safety and Health Act's ("OSHA") use of the term "willful" under 29 U.S.C. § 666 is synonymous with Indiana's use of the term "knowing" under IND.CODE § 22–8–1.1–27.1. Thus, we need only review whether this revised definition is a reasonable one.

Prior to this dispute, IOSHA defined the above term by following the Third Circuit's holding in *Frank Irey, Jr. v. Occupational Safety and Health Review Commission* (3rd Cir.1974), 519 F.2d 1200. *Frank Irey* interpreted "willful" under 29 U.S.C. § 666 as meaning "intentional disregard" or "plain indifference" to the requirements of OSHA. *Id.* at 1207. However, the *Frank Irey* court also injected a bad motive requirement into the word "willful" by reasoning that "intentional disregard" differs little from an "obstinate refusal to comply" or "flaunting of the Act." *Id.*

Upon further review of the relevant federal case law and the language of IND.CODE § 22–8–1.1–27.1 as it applied to the present dispute, IOSHA determined that requiring the word "knowing" to include a bad motive, was unwarranted. Instead, guided by *National Steel and Ship Building Company v. OSHRC* (9th Cir.1979), 607 F.2d 311, reflecting the majority view,[3] IOSHA decided to redefine the term. *National Steel* adopted the majority's interpretation of "willful" under 29 U.S.C. § 666 as including those acts "involving voluntary action, done either with an intentional disregard of, or plain indiffer-

ence to, the requirements of the statute." *National Steel,* 607 F.2d at 314 (quoting *Georgia Electric Co. v. Marshall* (5th Cir. 1979), 595 F.2d 309, 319). However, in rejecting the "bad motive" requirement of *Frank Irey, National Steel* reasoned that the above definition better serves the congressional intent behind OSHA, i.e., to promote safety in working conditions, and that *Frank Irey's* approach places too great a burden on the Secretary of Labor to find violations. *Id.*

IND.CODE § 22–8–1.1–27.1[4] provides, in pertinent part, as follows:

> "(a) The commissioner may assess the following civil penalties:
>
> \* \* \* \* \* \*
>
> (2) Any employer who has received a safety order for a serious violation of any standard, rule, or order or this chapter may be assessed a·civil penalty of up to one thousand dollars ($1,000) for each such violation.
>
> \* \* \* \* \* \*
>
> (4) Any employer who *knowingly* or repeatedly. violates any standard, rule, or order or this chapter may be assessed a civil penalty of up· to ten thousand dollars ($10,000).
>
> (b) For purposes of this section, a serious violation exists in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one (1) or more practices, means, methods, operations, or processes which have been adopted or are in use, in the place of employment, unless the employer did not know and could not, with the

---

3. For cases which reject the injection of a "bad purpose" into the term "willful" for 29 U.S.C. § 666, *see e.g. F.X. Messina Construction Corp. v. Occupational Safety & Health Review Commission* (1st Cir.1974), 505 F.2d 701, 702; *Intercounty Construction Co. v. Occupational Safety & Health Review Commission* (4th Cir.1975), 522 F.2d 777, *cert. denied,* (1976) 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82; *Georgia Electric Co. v. Marshall* (5th Cir.1979), 595 F.2d 309, 317–319, *Empire–Detroit Steel Division v. Occupational Safety & Health Review Commission* (6th Cir. 1987), 579 F.2d 378, 385; *Western Waterproofing Co. v. Marshall* (8th Cir.1978), 576 F.2d 139, *cert. denied,* (1979) 439 U.S. 965, 99 S.Ct. 452, 58

L.Ed.2d 423; *United States v. Dye Construction Co.* (10th Cir.1975) 510 F.2d 78, 81–82; and *A. Schonbeck & Co., Inc. v. Donovan* (2nd Cir.1981), 646 F.2d 799, 800.

4. This statute was recently amended, effective October 1, 1991. With the revised version, the civil penalties for a "serious" violation were increased from $1,000.00 to $7,000.00 per each violation. The civil penalty for a "knowing" violation was increased from $10,000.00 to a minimum of $5,000.00 and a maximum of $70,-000.00 per each violation. *See* IND.CODE § 22–8–1.1–27.1 (1991 Supp.).

exercise of reasonable diligence, have known of the presence of the violation." (Emphasis added.)

Here, the trial court found a heightened motive, i.e., a "bad motive" is necessary to the interpretation of the above statute due to the tenfold difference in penalties between "serious" and "knowing" violations. However, the plain language of the statute itself does not offer support for this statutory construction. Further, as the Fifth Circuit Court of Appeals explained persuasively in *Georgia Electric Co. v. Marshall* (5th Cir. 1979), 595 F.2d 309:

> "A 'bad purpose' requirement is not necessary to preserve the distinction between [knowing] and serious violations. To prove a [knowing] violation, the Secretary must show that the employer acted voluntarily, with either intentional disregard of or plain indifference to OSHA requirements. To prove a serious violation, a quite different showing need only be made. The gravamen of a serious violation is the presence of a 'substantial probability' that a particular violation could result in death or a serious physical harm."

*Id.* at 318–19.

Additionally, IOSHA's new definition of "knowing" is not inconsistent with Indiana law. IND.CODE § 22–8–1.1–17.5 (1988 Ed.) specifically prohibits our legislature from adopting or enforcing any law which is more stringent than the corresponding federal provision. As IOSHA correctly points out, the cases relied on by the trial court in rejecting IOSHA'S actions in the present case are inapposite as they deal with unrelated areas of Indiana law.

> *See Habig Trucking v. Public Service Comm* (1984), Ind.App., 466 N.E.2d 484 (licensing of common carriers);
> *Barnett v. Review Bd. of Ind. Employment Sec.* (1981), Ind.App., 419 N.E.2d 249, 251 (discharge for knowing violation of work rule in labor dispute).

More importantly, as noted earlier, IND. CODE § 22–8–1.1–27.1 was originally cloned after the federal OSHA standards codified in 29 U.S.C. § 666. Thus, IOSHA's decision to look to federal law in construing our statute was well within its discretion. *See Com'r of Labor v. Talbert Mfg. Co.* (1992), Ind.App., 593 N.E.2d 1229, 1232 (because IOSHA statute was nearly identical to federal counterpart, it was proper to employ rationale of federal judiciary in interpreting Indiana law). It cannot be said that IOSHA misconstrued IND.CODE § 22–8–1.1–27.1. Thus, the trial court's reversal on this basis, was not proper.

█ Next, the trial court found a due process violation to exist and struck IND.CODE § 22–8–1.1–27.1 as unconstitutionally vague.[5] The trial court made this determination due to the statute's failure to give Gary Steel adequate forewarning of the type of conduct prohibited and its failure to include a precise definition of the word "knowing."

█ Indiana legislation which is under attack is cloaked with a strong presumption of constitutionality. *Adoptive Parents of M.L.V. v. Wilkens* (1992), Ind., 598 N.E.2d 1054, 1058. The burden of overcoming this presumption is on the challenger. *Id.* Further,

> "[a] statute will not be found unconstitutionally vague when the language is sufficiently definite to inform a person of ordinary intelligence of a conduct which is prohibited. Meticulous exactitude and absolute precision are not required in drafting statutes. The specificity that due process requires may be ascertained by reference to the entire text of the statute, to well-settled common law meanings, to prior judicial decisions, to similar statutes, or to common generally accepted usage. If a statute can be made constitutionally definite by reasonable construction, the court's duty is to give the statute that construction." (Citations omitted.)

*Neudecker v. Neudecker* (1991), Ind.App., 566 N.E.2d 557, 562.

█ As noted earlier in this opinion, federal case law concerning the development of a reasonable definition of "willful," is exten-

---

5. Ironically, only IOSHA's second definition was found to be unconstitutionally vague. This is true even though the events supporting the alleged violations in the present dispute occurred prior to *any* effort by IOSHA to interpret the language of the statute.

sive. For the most part, federal courts are in agreement as to what is meant by this term. As Gary Steel does not allege that "knowing" and "willful" are dissimilar in meaning, it is not unreasonable to conclude that the statute is sufficiently definite to inform Gary Steel of its meaning. Even more important is the fact that this statute merely involves the classification of penalties; it does not prohibit any particular conduct.[6] Therefore, we reject the trial court's conclusion that IND.CODE § 22–8–1.1–27.1 is unconstitutionally vague. In a similar vein, since IOSHA merely corrected its own error by reinterpreting a statute already in existence which it is charged with enforcing, administrative rulemaking procedures were unnecessary. *See Waldron Health Care Home v. Magnant* (1991), Ind.App., 575 N.E.2d 343, 347.

 Next, the trial court reversed seven of the eight violations of IOSHA's Final Order finding IOSHA cited Gary Steel under the wrong federal regulation. The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 was created to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). In general, Occupational Safety and Health Standards, also referred to as "general industry standards," codified in 29 C.F.R. Pt. 1910, are binding upon employers engaged in businesses affecting commerce. *Cleveland Elec. v. OSHRC* (6th Cir.1990), 910 F.2d 1333, 1335. These general standards apply to working conditions unless specifically preempted by "industry-specific standards." *Cleveland Elec. v. OSHRC* (6th Cir.1990), 910 F.2d 1333, 1335. Both 29 C.F.R. § 1910.1000 (the general duty standard) and 29 C.F.R. § 1926.58 (construction industry-specific standard) are applicable to asbestos removal. However, as the trial court properly found, 29 C.F.R. § 1926.58, does not apply to Gary Steel, a manufacturer not engaged in construction or the construction industry.

> *See Brock v. Cardinal Industries, Inc.* (6th Cir.1987), 828 F.2d 373 (discussing definition of term "construction" for purposes of 29 C.F.R. § 1926.58);

> *Secretary of Labor v. B.J. Hughes* (OSHRC, 1982), 10 O.S.H.Cas. 1545, 1546–47 (BNA) (1982) (activities performed solely as part of non-construction operation should not be considered "construction work");

> *Chicago Rigging Company v. Uniroyal Chemical Co., Inc.* (N.D.Ill.1989), 718 F.Supp. 696 (asbestos removal and demolition not followed by further construction not "construction work" under Miller Act).

The trial court properly reversed these seven violations. *See* IND.CODE § 4–21.5–5–14(d)(1) and (5) (1988 Ed.) (court may reverse agency decision unsupported by substantial evidence and contrary to law).

 Last, Gary Steel was cited under 29 C.F.R. § 1910.134(b)(1) for its alleged failure to provide a written standard operating procedure to its employees and its failure to instruct and train employees in the proper use of respirators as is required by 29 C.F.R. § 1910.134(b)(3). IOSHA found that Primich provided Glotfelty with directions for a respirator while misrepresenting to him that its maintenance employees had been provided with respirators on October 3, 1989.

The evidence discloses the respirator directions were given to Glotfelty in response to a general question regarding whether Gary Steel had any standard operating procedures for respirators. No inquiry or discussion about the specific use of respirators, on the dates in question, occurred. Glotfelty himself indicated to the ALJ that he could not recall whether or not Gary Steel represented to him that respirators were used. The trial court also properly reversed this violation as being unsupported by the evidence.

For the above-stated reasons, the decision of the trial court is affirmed.

Affirmed.

STATON and BAKER, JJ., concur.

---

6. While IND.CODE § 22–8–1.1–27.1 provided for the classification of penalties, Gary Steel's conduct was regulated by the Federal Code of Regulations, specifically, 29 C.F.R. 1900, *et seq.*